IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PATRICK MEEKS,

     Plaintiff,

v.                                CASE NO. 1:15-cv-87-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for a period of disability and disability insurance benefits.  (ECF

No. 1.)  The Commissioner has answered, and both parties have filed briefs

outlining their respective positions.  (ECF Nos. 9, 17, 18.)  For the reasons

discussed below, it is recommended that the Commissioner's decision be

affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability

insurance benefits on August 4, 2011, alleging an onset date of September

3, 2010.  (R. 270-71.)  Plaintiff's application was denied initially and upon reconsideration.  (R. 116, 126-27, 142.)  After a hearing, held on December 19, 2013, Administrative Law Judge ("ALJ") Michael A. Krasnow issued a written decision on January 9, 2014, finding that Plaintiff was not disabled. (R. 13-26.)  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on March 3, 2015. (R. 1-6.)   This appeal followed.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]

---

[3] *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] *Keeton v. Dep't Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age,

---

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the

---

[13] 20 C.F.R. § 404.1520(f).

[14] *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] *Doughty*, 245 F.3d at 1278 n.2. In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] *Walker*, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[17] *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Walker*, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] *Walker*, 826 F.2d at 1003.

[19] *Wolfe*, 86 F.3d at 1077-78.

[20] *See id.*

### III.  SUMMARY OF THE RECORD

### A.    Medical History

Plaintiff raises for review the issue of whether the ALJ properly considered Plaintiff's complaints of "drowsiness and sleepiness" under the Eleventh Circuit's three-part pain standard.  The summary of the medical record, therefore, will focus on these complaints, along with records that provide appropriate context.

Plaintiff completed a function report on August 28, 2011.  He reported that he had trouble "sleep[ing] when hot" and that one of his medications, Exdrine [sic], caused drowsiness.  (R. 375-82.)  Plaintiff completed a supplemental pain questionnaire on November 25, 2011.  He listed side effects from his medications, including dizziness and drowsiness.  Plaintiff stated that he does not "sleep well at night[,] the [] Xanax helps some." (R. 410-12)  On that same date, he completed a function report and in the report stated that he does not "sleep well at all" due to his physical conditions (including anxiety, depression, sleep apnea, and breathing disorders) and that the side effects from his medications make him drowsy. (R. 413-20.)  Plaintiff reported "severe drowsiness" from his medications, and claimed this made it difficult for him to work.  (R. 434.)

On September 28, 2011, Plaintiff was examined by Dr. Robert G. Mooring, Psy. D., a licensed psychologist, for a mental status examination. At the time of the evaluation, Plaintiff was attending University of Phoenix to study web design and information technology, but he reported that he was failing his classes.  He was unemployed, but seeking work.  According to Plaintiff, he had been working "off and on" through a temp agency from March 2011.  Plaintiff claimed that his anxiety caused him to have trouble sleeping.  He described his sleeping routine as "variable" and estimated that he sleeps three to five hours a night.  Plaintiff said that he has difficulty sleeping due to "thoughts."  He reported that he spent his day looking for work and that he completes about five job applications a day.  (R. 585-89.)

Plaintiff sought treatment for his pulmonary condition and insomnia at the Pulmonary and Sleep of Tampa Bay on March 27, 2012.  The provider assessed him with hypersommnia (excessive sleepiness) with sleep apnea, unspecified, and insomnia.  To treat his insomnia, it was recommended that Plaintiff keep sleep logs and "sleep hygiene."  The provider recommended that Plaintiff follow up in two weeks.  (R. 606-08.)

At his follow up appointment on April 13, 2012, Plaintiff was prescribed Ambien (10 mg) for his insomnia.  It was also recommended that

Plaintiff participate in a sleep study. (R. 611-13.)

Plaintiff had a sleep study performed on April 20, 2012 at Pulmonary
& Sleep of Tampa Bay.  He reported to the technician "difficulty initiating
and maintaining sleep, waking approx[imately] ever two hours."  The
technician noted several obstructive apneas, more severe when Plaintiff
was in REM sleep.  The technician observed audible moderate to loud
snoring and arousals.  The technician wrote that Plaintiff's REM sleep was
brief due to the respiratory events. (R. 615-17.)

The VA provided progress notes on Plaintiff's condition.  (R. 807-41.)
In April of 2012, Plaintiff represented that his gastrointestinal problems were
under better control and as a result, he was sleeping better and "not waking
up choking."  (R. 820.)  He stated that he was not using his CPAP machine
(continuous positive airway pressure), and the physician encouraged him to
continue to use it.

On June 11, 2012, Plaintiff went to the VA for a psychiatry consult.
He told the physician that he sleeps four hours a night and that his sleep
study revealed sleep apnea and hypersomnia.  He represented that he
usually woke up every two hours.  Plaintiff stated that he experienced
periods of up to four days where he did not sleep at all, and noted that this

occurred once monthly.  Plaintiff expressed that during these periods, his

behavior does not change.  He also stated that he does not have problems

with his energy, concentration, and appetite.  The physician noted that

Plaintiff was currently employed in customer service.   (R. 619-25.)

Dr. Jose J. Llinas of the Veterans Health System filled out a mental

impairment questionnaire on August 5, 2013 for Plaintiff based on a

previous examination.  Dr. Llinas noted that Plaintiff had sleep disturbance,

decreased energy, difficulty thinking or concentrating, and poor memory.

Dr. Llinas noted that Plaintiff was taking antidepressant and anti anxiety

medications, but when asked to describe any side effects experienced

(including drowsiness), Dr. Llinas stated that Plaintiff usually tolerated the

medications well. He assigned Plaintiff a GAF of 60.  (R. 782-86.)

On August 21, 2013, Lorraine Mercier, ARNP, filled out a "Sleep

Disorders Residual Functional Capacity Questionnaire" regarding Plaintiff's

impairments.  She diagnosed Plaintiff with moderate obstructive sleep

apnea.  She identified his symptoms as excessive daytime sleepiness,

sleep apnea, insomnia, and fatigue.  The only limitation that she noted was

that Plaintiff should not drive when sleepy.  She did not list any other

exertional or nonexertional limitations, and did not note that Plaintiff would

be absent from work as a result of his sleep disorders. (R. 787-90.)

The VA conducted a functional capacity evaluation for Plaintiff on November 4, 2013.  With respect to Plaintiff's sleep-related difficulties, Plaintiff reported that he could not stay awake for long periods of time and that he got tired very easily.  He stated that he slept or laid down for about four hours a day.  The examiner noted that Plaintiff had improved movement ability when he was distracted, suggesting that he was attempting to control the test to demonstrate more pain and disability than were actually present.  Plaintiff passed only thirteen of twenty-four validity criteria, which the examiner opined was poor effort or voluntary submaximal effort.  The examiner concluded that Plaintiff was capable of performing "at least light type of work 8 hours per day" and that Plaintiff showed symptom and disability exaggeration behavior.  (R. 842-60.)

**B.   Hearing Testimony**

At the time of the hearing, Plaintiff was a forty-four year old man.  He testified that he drove part of the way to the hearing, but then about halfway through his cousin took over the driving.    Plaintiff said that his pulmonologist recommended that he only drive "a certain amount of time."

Plaintiff completed high school and some college.  He served in the

Army until 1993 and received an honorable discharge. Plaintiff worked with several temporary agencies doing "light duties." He estimated that he worked one to three days per week for about four to six hours. He left the temporary agency because there was not enough work.

Plaintiff worked at Rent-A-Center, Labor Ready, and Taylor Rentals mostly lifting heavy items, such as sofas and construction equipment.

Plaintiff testified that he takes Prozac as a mood stabilizer, which causes him "extreme drowsiness" on top of his sleep apnea and excessive daytime sleepiness. He said that while working with Manpower, his boss would frequently "get on [him] about being asleep" and about being drowsy. He states that he is not drowsy all the time, and it varies from day to day.

Plaintiff testified that he uses a BiPAP machine at night for his obstructive sleep apnea, which the VA recently adjusted. He received counseling on how to achieve optimal performance with the machine, but said that some of the counseling works and some does not.

He testified that his fluoxetine, a mood stabilizer, which he takes at noon, puts him "out like a light" and causes him to sleep for two and a half to three hours. Plaintiff stated that he gets about four hours of sleep per night, and he sleeps periodically during the day. He stated that his periods

of excessive daytime sleepiness is not every day, but estimated that it would occur three out of five days.

Plaintiff testified that he sells crafts (described as a wine bottle with lights in it, "lighted spirits") at local flea markets, but states that it is not a substantial source of income and that he has not made any in a year because he has many that he has not sold yet.  He is able to take care of his daily needs, including showering, getting dressed, grocery shopping, and cooking.  Plaintiff states that he can perform household chores like mopping and sweeping, but he has trouble gathering the energy to perform these chores.  He uses the Internet and plays some online games.  (R. 34-86.)

## C.    Findings of the ALJ

The ALJ determined that Plaintiff had the severe impairments of asthma, irritable bowel syndrome, migraines, sleep apnea, status post right wrist injury, anxiety related disorder and affective mood disorder. The ALJ concluded that none of the impairments, singly or in combination, met or medically equaled the severity of a listed impairment.

The ALJ then found that Plaintiff had the following residual functional capacity: "[L]ight work as defined in 20 C.F.R. § 404.1567(b) except the

[Plaintiff] is limited to no more than frequent climbing of ramps and stairs, and no more than occasional climbing of ropes, ladders and scaffolds. Further, [Plaintiff] is limited to no more than frequent handling with his right upper extremity. [Plaintiff] must avoid concentrated exposure to extreme cold, extreme heat, and hazards . . . and moderate exposure to fumes, odors, dusts, and gases. [Plaintiff] is limited to simple, routine and repetitive tasks, with no production rate for pace of work, instead work involving meeting goals, and with no more than frequent interaction with general public and co-workers.  Lastly, the claimant also must have regular access to a restroom, defined as having one available on the same floor."

Based on Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff could perform his past relevant work as a rental clerk of furniture as generally performed in the national economy.  Although he was not required to do so the ALJ then went on to step five of the sequential analysis, and with the assistance of a vocational expert, determined that Plaintiff could perform other work in the national economy such as officer helper, document preparer and mail clerk.  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 13-26.)

# IV. DISCUSSION

Plaintiff contends that the ALJ failed to consider properly his complaints of drowsiness and sleepiness under the Eleventh Circuit three-part pain standard.  This is the only issue raised on appeal.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995).  The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."  *See Foote*, 67 F.3d at 1560.  Under that test, evidence of an underlying medical condition must exist.  *Id.*  If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.  *Id.*  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Id.* at 1561.

If the record shows that the claimant has a medically-determinable

impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.  *Id*. § 404.1529(c)(1)-(2).  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.  *Id*. § 404.1529(c)(3).  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.  *Id*. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons

for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Id*. at 1562.  The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532 (11th Cir.1991).  The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence.  *Foote*, 67 F.3d at 1562.  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case*.  Id.*

The Eleventh Circuit's pain standard may be applied to complaints of subjective conditions other than pain.  *See Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990)(the Eleventh Circuit applied the pain standard to the claimant's complaints of pain and dizziness); *Pitts v. Comm'r of Soc. Sec*., Case No. 01-16397, Slip op. at 8 (11th Cir. May 1, 2002)(considering the claimant's complaints of fatigue due to Chronic Fatigue Syndrome under

the three part pain standard).   The ALJ is not required to recite the pain standard, but he must make findings that indicate that the standard was applied.  *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013).

In this case, the ALJ did not err in assessing Plaintiff's credibility, and a review of his decision shows that the ALJ appropriately applied the pain standard.  The ALJ found that Plaintiff has underlying medical conditions, including asthma, irritable bowel syndrome, migraines, sleep apnea, status post right wrist injury, anxiety related disorder and affective mood disorder. The ALJ stated that Plaintiff's impairments could be expected to cause the alleged symptoms, but Plaintiff's statements as to the disabling effects of the symptoms were not entirely credible.

In this appeal, Plaintiff argues that the ALJ erred by failing to discuss Plaintiff's complaints of daytime somnolence.  As a preliminary consideration, the ALJ is not required to reference every piece of evidence, as long as the decision is not a broad rejection that does not enable the Court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1211.  In this case, however, the ALJ did discuss the objective medical evidence pertaining to Plaintiff's impairment

of sleep apnea, which was the cause of his daytime sleepiness.

As to Plaintiff's sleep apnea and complaints of drowsiness, substantial evidence supports the ALJ's conclusion that his daytime somnolence was not entirely disabling.

For example, the ALJ expressly relied upon the August 21, 2013 Sleep Disorder RFC Questionnaire completed by Lorraine Mercier, an ARNP.  In the sleep questionnaire ARNP Mercier stated that Plaintiff exhibited symptoms of insomnia, excessive daytime sleepiness, sleep apnea and fatigue.  After acknowledging Plaintiff's symptoms, ARNP Mercier was required on the form to identify the limitations from Plaintiff's impairments. The only limitation ARNP Mercier placed on Plaintiff's ability to work was a prohibition on driving when he was sleepy.  Notably, ARNP Mercier did not impose any other limitations on Plaintiff's ability to work, including potential absence from work and did not impose any non-exertional work limitations. In short, the Sleep Disorder RFC Questionnaire fully supports the conclusion that Plaintiff's daytime somnolence did not cause significant work-related limitations.[21]

---

[21] The ALJ did include a limitation in Plaintiff's RFC that he avoid concentrated exposure to hazards based upon ARNP Mercier's assessment.

No other evidence in the record demonstrates that Plaintiff's allegations of sleepiness and drowsiness support additional functional limitations other than those imposed by the ALJ.  Although Plaintiff reported difficulty sleeping and periods of several sleepless days to his health care provider at the VA, Plaintiff also denied problems with energy and concentration.  Plaintiff noted difficulty sleeping to Dr. Mooring, but at the same appointment, Plaintiff stated that he spent his days completing job applications and looking for work, activities which are at odds with Plaintiff's contention that his sleepiness limits his ability to work.

The record also does not evidence that Plaintiff's complaints of daytime somnolence affect his concentration in a manner more severe than accounted for in the RFC.  While a psychiatrist at the VA noted that Plaintiff reported difficulty concentrating the difficulty was attributed to Plaintiff's anxiety rather than to sleepiness.  (R. 722.)  And while Plaintiff reported short term memory problems at the VA in December of 2012, the examiner found that no deficits in recent or remote memory were observed.  (R. 756-61.)  The examiner also noted at that appointment that Plaintiff was accurately oriented and that Plaintiff did not evidence manic thought disorder or psychosis.  The examiner stated that the basic content of

Plaintiff's thought process was relevant, but he was tangential and prone to go into great detail.   *Id.*  Further, Plaintiff denied issues with decreased energy or concentration during treatment at the VA and stated that his difficulties sleeping do not change his behavior.  (R. 619-25.)  Overall, the record does not evidence that Plaintiff's sleepiness causes any additional limitations on his ability to concentrate.

The other evidence in the record also undermines Plaintiff's claims of disability based on his daytime somnolence.  For example, the function report completed by the VA suggested that Plaintiff has the ability to perform light work for eight hours a day.  Notably, the examiner reported that Plaintiff may be exaggerating his symptoms and disability.

The ALJ also relied upon Plaintiff's activities of daily living as evidence that undermined Plaintiff's credibility regarding Plaintiff's claim that his daytime somnolence prevented him from working. The ALJ noted that during the period of time Plaintiff alleged extreme daytime somnolence Plaintiff reported that he made crafts and sold them at local flea markets, attended online college classes at the University of Phoenix, and said he attempted to find work with a temporary agency.   Plaintiff also told Dr. Mooring that he has been working "on and off" through a temporary agency

since March 2011.  These activities are at odds with Plaintiff's contention

that his daytime somnolence is disabling.

The Court, therefore, concludes that the ALJ applied the correct legal

standards and that substantial evidence supports the ALJ's credibility

determination and assessment of Plaintiff's RFC.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Gainesville, Florida, on the 15th day of June 2016.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.